IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM D. KLAUS, JR.,

                Plaintiff,                OPINION AND ORDER

v.

                                    09-cv-479-wmc

EAU CLAIRE AREA SCHOOL DISTRICT,
c/o Dr. Ronald A. Heilmann, Jr. and Carol J. Craig,
CAROL J. CRAIG, MARY C. KNEER, BRENT M.
WOGAHN, PATRICIA M. CUMMINS, MICHAEL
A. BOLLINGER, KENNETH M. FAANES and
D. ADAM SHIEL,

                Defendants.

---

In this civil action, plaintiff pursues claims pursuant to 42 U.S.C. § 1983 for violation of his due process rights under the Fourteenth Amendment and state common law for breach of contract and defamation. At the parties request, this opinion addresses on an expedited basis only plaintiff's motion for declaratory and summary judgment on the enforceability of plaintiff's 2009-2011 Administrator Contract, which in conjunction with plaintiff's 2007-2009 contract signed on the same day, would effectively bind the Eau Claire Area School District to employ plaintiff for four years. Dkt. #24.[1] Plaintiff's motion addresses three discrete issues: (1) whether plaintiff's 2009-2011 contract violated the express prohibition on administrator contracts exceeding a two-year term set forth in Wis. Stat. § 118.24(1); (2) if so, is the 2009-2011 contract therefore void and unenforceable; and (3) if the contract is

---

[1] On June 1, plaintiff's counsel wrote, on behalf of the parties, requesting that, if possible, the court issue an opinion and order on at least plaintiff's motion before June 30, 2010, which is when plaintiff's current employment contract with defendant Eau Claire Area School District is set to expire. Dkt. #56.

not void, whether defendants have breached the contract. The meaning of §118.24(1) and its application to the terms of a superintendent's contract appear to be questions of first impression under Wisconsin law, and the parties point the court to *no* legislative history or prevailing practices under this statute for guidance. Nevertheless, because enforcement of the contract violates an express limitation in Wis. Stat. § 118.24(1) that "[t]he term of each employment contract may not exceed 2 years," the 2009-2011 contract is illegal as written and void as a matter of law. Plaintiff's motion will, therefore, be denied and defendants are entitled to summary judgment in their favor on plaintiff's claim for breach of that contract.

## UNDISPUTED FACTS[2]

Defendant Eau Claire Area School District is governed by a Board of Education whose members are the District's final policymakers when acting in their official capacity. In late 2002 or early 2003, Klaus and the Board discussed what the District could do to retain Klaus's services as Superintendent. Since the District could only afford minimal pay increases, Klaus explained that longevity in the District was also important to him. Klaus suggested, therefore, that the Board offer him multiple two-year contracts instead of a larger salary based on his attendance at a Wisconsin Association of School District Administrator's meeting, where he was informed that such contracts were permissible under Wisconsin law.

The Board president at the time, Carol Olson, asked Klaus to speak with the Board's

---

[2] The following facts taken from plaintiff's proposed findings of fact are material and undisputed for purposes of summary judgment.

attorney, Steve Weld. Klaus told Weld about entering into multiple two-year contracts to off-set the smaller salary the District could afford. The Board unanimously agreed to offer Klaus two separate, two-year contracts. The Board and Klaus executed both contracts on the same day, February 17, 2003. The first contract employed Klaus from July 1, 2003, through June 30, 2005, and the second from July 1, 2005, through June 30, 2007. The second contract contained a provision explaining that if the Board did not advise Klaus of an intent not to renew his contract by December 31, 2005, a further one-year extension for the 2007-2008 school year would be triggered. The Board and Klaus also agreed to execute similar, new contracts going forward.

In December 2006, however, Klaus advised the Board that he wanted to step down voluntarily as Superintendent of the District. The following month the Board performed its evaluation of Klaus. That same day, January 8th, the Board and Klaus discussed his contracts. About a month later, Klaus executed separate, two-year administrator contracts, employing him from July 16, 2007, through June 30, 2009, and the second from July 1, 2009 through June 30, 2011.

Both new contracts noted that the Board had approved Klaus becoming a middle school principal and provided him with the option of obtaining an early retirement stipend. The second contract contained a provision explaining that if the Board did not advise Klaus of an intent not to extend the contract by December 31, 2007, a one year extension for the 2011-2012 school year would also be triggered. The Board unanimously voted to approve Klaus's contracts. The Board did not advise Klaus of an intent not to trigger the one-year

extention on the second contract by December 31, 2007.

Board members raised questions in the summer of 2007 about whether Klaus could obtain his early retirement stipend for his years as Superintendent while still employed by the District as middle school principal. By December 2008, the Board demanded that Klaus execute a new, one-year contract. Klaus refused. The following month, the new District Superintendent, Ronald Heilmann, issued Klaus a letter informing him that the Board believed that the second of his contracts for 2009-2011 was invalid under Wisconsin law. At that time, the Board also issued Klaus a "Preliminary Notice Of Consideration Of Non-Renewal Of Administrator Contract." Without waiving any rights or arguments regarding the validity of the 2009-2011 contract, the Board and Klaus subsequently entered into a "Stipulation And Agreement Regarding Administrative Employment Contracts" in April 2009, allowing Klaus to remain employed by the District through June 30, 2010.[3] The parties further agree that (1) Klaus and the Board entered into the 2009-2011 administrator contract without any fraud or deception and (2) both sides believed that the contract was valid when signed.

## OPINION

Regardless of what the parties intended and believed about the second contract, defendants now contend that it is void and unenforceable as a matter of law because its

[3] The stipulation also waived the statutory time-lines provided for under Wis. Stat. § 118.24(6), which would have required the Board to give Klaus notice in writing of refusal to renew his 2007-2009 contract four months before the contract was set to expire.

enforcement violates a state statute. Plaintiff disagrees and contends that a plain reading of the statute supports that contract's enforcement. The crux of the parties' dispute, therefore, is whether Klaus's 2009-2011 contract is void because its enforcement would violate Wis. Stat. § 118.24(1).[4] Defendants have the better of that argument.

**A. Interpreting Section 118.24(1)**

Statutory interpretation is "a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123-24. Determining a statute's meaning is premised on the presumption "'that a legislature says in a statute what it means and means in a statute what is says there.'" *Id.* at ¶39 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249 253-54 (1992)). The interpretation process "begins with the language of the statute. If the meaning of the statute is plain, [the court] ordinarily stop[s] the inquiry." *State ex rel. Kalal*, at ¶45 (internal quotation omitted). Further, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id* at ¶46.

---

[4] The parties agree that Wisconsin law applies to their contract dispute in this case. In absence of dispute over choice of law, the court will, therefore, apply the law of forum state, which is Wisconsin law. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002).

If analysis of the statute produces "a plain, clear statutory meaning," without any ambiguity, "there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* This is because "[a] court is not at liberty to disregard the plain, clear words of the statute." *Id.* at ¶47. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.* The issue is not, however, whether there is a disagreement between the parties about the statutory meaning, but "whether well-informed persons *should have* become confused, that is, whether the statutory . . . language *reasonably* gives rise to different meanings." *Id.* (internal quotation omitted; alteration and emphasis in original).

In this case, the subsection states in whole:

> A school board may employ a school district administrator, a business manager and school principals and assistants to such persons. The term of each employment contract may not exceed 2 years. A contract for a term of 2 years may provide for one or more extensions of one year each.

Wis. Stat. § 118.24(1).[5]

Both parties contend that the meaning of this statutory subsection is unambiguous. Not surprisingly, they disagree utterly about the meaning. Plaintiff takes the position that the plain language of the above statutory provision "clearly demonstrates that multiple administrator contracts are permissible" so long as each contract does not exceed two years in length. Pl.'s Reply Br., dkt. #46, at 4. While the language of the relevant portion of the

---

[5] The court quotes from the 2009-10 version of the statute, the relevant portion of the statute has not been amended since 1995. Thus, the quoted version remains the same as that in effect in 2007 when the contracts at issue were executed.

statute could be stretched in isolation to support plaintiff's proposed interpretation, when the language is read in context, plaintiff's interpretation would render the provision meaningless, if not produce absurd or unreasonable results.

Plaintiff's interpretation focuses on the portion of the statute that says "[t]he term of each employment contract may not exceed 2 years." Wis. Stat. § 118.24(1). According to plaintiff, use of the word "each" to modify "employment contract" limits the term of any single employment contract to two years, while leaving uncapped the number of consecutive two-year contracts an administrator could enter into at the same time. In other words, an administrator could enter into any number of consecutive, two year contracts at once -- whether two, five or ten contracts -- even if signed on the same day, so long as each individual contract did not cover a term of more than two years. For example, an administrator could contractually bind a school district at the outset to employ him from June 30, 2010 until June 30, 2020, so long as the ten years of employment were established using five distinct contracts with two-year terms or ten distinct contracts with one-year terms, as opposed to what both sides agree would be an illegal, single contract with a ten-year term.

As the example demonstrates, this interpretation would essentially read out the two-year term limit placed on school district administrator employment contracts in Wisconsin by § 118.24(1). While the statute may not be a model of clarity, neither is it so befuddling or ambiguous that it permits this interpretation. The statute, read in context, is meant (if nothing else) to limit the term for which an administrator can be locked into employment

with a district.

As written, the statute does not create an outright bar on administrators being employed with the same district for more than two years. What the statute does require is some action or -- in the case of one-year renewals or upon approaching the end of a two-year term -- inaction by a school board to have the administrator's employment extended beyond an initial two-year term. *See* Wis. Stat. §§ 118.24(1) ("A contract for a term of 2 years may provide for one or more extensions of one year each."); 118.24(6) (if no notice of either renewal of contract or of refusal to renew the contract is given at least 4 months prior to the expiration of the contract, then the contract in force will continue in force for 2 additional years). The requirement either to extend, renew or refuse to renew a two-year employment contract would be at best superfluous and at worst usurped if a school board could simply enter into multiple two-year contracts at the same time, effectively extending the administrator's employment for decades into the future.

This interpretation of § 118.24(1) is at least consistent with the term limits of Wisconsin school district board members. Because school board members serve for three-year terms, there is the potential for a school board to be comprised of entirely new members every three years. *See* Wis. Stat. § 120.06(3). By prohibiting more than two-year terms, or perhaps three considering the possibility of a one-year renewal, section 118.24(1) effectively precludes current school board members from binding the district to its current administrators beyond any of their terms. The statute instead gives each newly-elected board an opportunity to decide whether the current administrators are capable of leading the

district's schools in the direction necessary to accomplish those educational goals the then members choose.

Whether or not this future, political consideration should overcome the obvious limitation it imposes on a current board's desire to attract and lock in the very best administrators available -- at least by offering long-term contracts, as opposed to other benefits -- is for the legislature, not this court, to decide. Here, the legislature decided to grant each new school board the power to decide at least every two years whether an administrator should remain employed by the district. This power would be eviscerated if plaintiff's interpretation was accepted.

Because the statute's meaning is unambiguous, at least in the context of related Wisconsin statutory provisions, there is no need to consult any "extrinsic aids," such as legislative history in interpreting the meaning. Indeed, neither side to this suit offers any. Still, the legislative history may be consulted regarding an unambiguous statute to confirm or verify a plain-meaning interpretation. *State ex rel. Kalal*, 2004 WI 58, ¶46, ¶51.

Here, the court's examination of the legislative history surrounding § 118.24(1) has revealed an ongoing tension between (1) providing administrators with more job security by allowing for longer term contracts versus (2) keeping a tight cap on administrator employment terms to provide publically elected school boards the flexibility to change administrators every two to three years. *See* Wisconsin Legislative Reference Bureau Drafting Records for 1983 Wisconsin Act 317 and 1995 Wisconsin Act 27 (microformed). This tension is evidenced by oft suggested statutory changes attempting to insure that

9

administrator contracts carry no maximum and some minimum terms, such as proposing that they be for a term of *at least* 2 years, *not less* than 2 years, or that they *must be* for a term of 2, 3 or 4 years.  For reasons unexplained, each such proposal has been rejected.  Instead, the statute has consistently maintained a cap on the length of administrator employment contracts.  And despite repeated amendments varying the precise term length, the cap has remained between a straight three years and two years with a possible one-year extension *(i.e., not more* than 3 years or may *not exceed* 2 years).  If anything is confirmed by this history, it is that the statute is intended to limit the length for which an administrator can be locked into employment within a given district.

For all the reasons stated, a plain reading of § 118.24(1) limits a school administrator's employment contract to a single two-year term, with the possibility of rolling, one-year extensions.  Stated another way, the statute's plain meaning prohibits employment contracts that explicitly or, as is the case here, implicitly lock-in an administrator to a term of employment of more than two years with the *possibility* of additional one-year extensions.

B.  **Legality of 2009-2011 Contract**

Klaus's second contract entered into by the school board on the same day as his first -- which covered the original 2007-2009 term -- states in relevant part that:

> Term.  This contract shall commence on July 1, 2009, and end on June 30, 2011.  Unless the Board notifies Administrator by December 31, 2007, of its intent to not do so, the contract shall be subject to a single one-year extension to cover the 2011-12 school year and the parties shall enter into a written

> contract for the 2009-11 term. The parties agree that future contracts will have an annual deadline of December 31 for notice of intent to not extend.

Lubinsky Aff., dkt. #30, ex. 2 at 70.

Even though the contract does contain a savings clause permitting enforcement of so much of the agreement as is not found invalid, no part of this provision can be upheld under § 118.24(1). In signing onto the first sentence of the "term" provision on the same day the Board signed the 2005-2007 contract, the school board effectively locked the district into a four-year employment contract with Klaus. The second sentence of this provision -- purporting to bind the parties to a *fifth* year if the Board fails to notify Klaus of its rejection by December 31, 2007 (just six months after the first contract started) -- would similarly create a binding contract of four and one-half years.

Perhaps in what was "belt and suspender" drafting, the second sentence of the term provision might be read not only to trigger a fifth year just six months into the original, two-year contract, but independently require the parties to enter into a written contract for the 2009-11 term unless the Board gave Klaus the appropriate notice by December 31, 2007. But even this reading would bind the district to a three and one-half year contract, which still violates the statute.

However read, the term provision of the contract would provide Klaus with a term of employment in contradiction to that permitted by the statute and is, therefore, void and unenforceable. *See Abbot v. Marker*, 2006 WI App 174, ¶6, 295 Wis. 2d 636, 641, 722 N.W.2d 162, 164-65 ("A contract is considered illegal when its formation or performance is forbidden by civil or criminal statute . . . ."); *see also Hiltpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 717, 298 N.W.2d 217, 220 (Wis. Ct. App. 1980) ("[An illegal] contract is void and

courts will leave the parties where they find them."). Because it is void, plaintiff's claim that defendants breached their contract must fail as a matter of law as well. *Abbot*, 2006 WI App at ¶13 ("[T]he fact that the agreement between Marker and Abbott is directly contrary to [the] statute is reason enough for us to decline to enforce the contract as a matter of law "); *see also* 2 *Contract Law in Wisconsin* § 1.23 (3d ed. 2007) ("Void contracts are a nullity; they are deemed not to exist at law. The purported parties to the contract have merely gone through the motions and created no legal rights or obligations.").

ORDER

IT IS ORDERED that:

(1) Plaintiff's motion for declaratory and summary judgment (dkt. #24) is DENIED;

(2) Defendants are entitled to declaratory judgment in their favor that plaintiff's 2009-2011 administrator contract is void and unenforceable;

(3) Because the 2009-2011 administrator contract is void, defendants' motion for summary judgment is GRANTED on plaintiff's claim that defendants breached the contract.

(4) All other issues raised in defendants' motion for summary judgment remain under consideration by the court.

Entered this 18th day of June, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge